IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                    *

UNITED STATES OF AMERICA

                                    *

        v.                          CRIMINAL NO.: WDQ-08-0086

                                    *

STEVE WILLOCK, *et al.*

                                    *


*   *   *   *   *   *   *   *   *   *   *   *   *


MEMORANDUM OPINION


On February 21, 2008, the grand jury indicted Anthony

Fleming, Michelle Hebron, Tavon Mouzone and others[1] for Conspir-

acy to Participate in a Racketeering Enterprise.  Fleming was

also charged with Conspiracy to Distribute and Possess with the

Intent to Distribute Controlled Substances and Distribution of

and Possession with the Intent to Distribute Controlled

Substances.  Pending are pretrial motions.  A hearing was held

on November 5, 2009.

---

[1] Fleming, Hebron and Mouzone are scheduled for trial on March
29, 2010.  This Memorandum Opinion resolves motions made or
adopted by Fleming and Mouzone; Hebron's motions were resolved
in the Court's January 7, 2010 Memorandum and Order (Paper Nos.
806, 807).

    The defendants have moved to adopt a number of co-defendant
motions.  The motions to adopt request procedural (*i.e.*,
permission to adopt the co-defendant's motion) and substantive
(*i.e.*, the relief sought by the co-defendant's motion) relief.
The procedural relief requested in all the motions to adopt will
be granted.  When the substantive relief sought in a motion to
adopt is denied, the motion will be "GRANTED IN PART and DENIED
IN PART."

I.    Motions to Sever (Paper Nos. 829, 835)

Fleming and Mouzone seek severance from Hebron under Fed.
R. Crim. P. 14.[2]  They argue that evidence about Hebron's alleged
murder of David Moore is irrelevant to the allegations against
them--and thus inadmissible--because there is insufficient
evidence connecting them to a conspiracy that involved Moore's
murder.

Under Fed. R. Crim. P. 8(b), defendants may be charged in
the same indictment "if they are alleged to have participated in
the same act or transaction, or in the same series of acts or
transactions constituting an offense or offenses."  "Barring
special circumstances, individuals indicted together should be
tried together."  *United States v. Singh*, 518 F.3d 236, 255 (4th
Cir. 2008).  Indeed, unless a "miscarriage of justice" will
result, there is a presumption that co-defendants should and
will be tried together.  *Richardson v. Marsh*, 481 U.S. 200, 206-
11 (1987).  This presumption is especially strong in conspiracy
cases.  *United States v. Harris*, 498 F.3d 278, 291 (4th Cir.
2007).

---

[2] Fleming (Paper No. 595) and Mouzone (Paper No. 600) had
previously moved for severance from other defendants with whom
they were to be tried on November 2, 2009.  To the extent that
these motions are construed as Fleming and Mouzone's requests
for severance from each other, they will be denied.  Neither
defendant has identified a trial right that may be compromised
if they are tried together, *see Zafiro v. United States*, 506
U.S. 534, 539 (1993), or identified any other ground requiring
severance.

2

Fed. R. Crim. P. 14 permits severance if "joinder of . . .
defendants . . . appears to prejudice a defendant."  Severance
is only required when "there is a serious risk that a joint
trial would compromise a specific trial right of one of the
defendants or prevent the jury from making a reliable judgment
about guilt or innocence."  *Zafiro v. United States*, 506 U.S.
534, 539 (1993).[3]

Fleming, Mouzone and Hebron were properly joined in the
Indictment because they "are alleged to have participated in . .
. the same series of acts or transactions constituting an
offense"--*i.e.*, the racketeering conspiracy alleged in Count
One.  Fleming and Mouzone have not overcome the strong
presumption that they should be tried together.  *Harris*, 498
F.3d at 291.  Their motions allege that there is insufficient
evidence that the acts with which they and Hebron are charged
are part of the same conspiracy; accordingly, they assert that
Hebron's alleged murder of Moore is irrelevant to the charges
against them and thus inadmissible against them.  They contend
that requiring trial with Hebron would "compromise a specific

---

[3] Severance is not required merely because the evidence against
one or more defendants is stronger--or more inflammatory--than
evidence against other defendants.  *See Singh*, 518 F.3d at 255;
*Harris*, 498 F.3d at 291-92.  The defendant requesting severance
must "establish that actual prejudice would result from a joint
trial . . . not merely that a separate trial would offer a
better chance of acquittal."  *United States v. Reavis*, 48 F.3d
763, 767 (4th Cir. 1995).

trial right" by allowing the jury to hear evidence that is only admissible against Hebron.

The Indictment alleges that Fleming, Mouzone and Hebron conspired to participate in a racketeering enterprise and did overt acts--including the murder of Moore--in furtherance of the conspiracy.  Under *Pinkerton v. United States*, 328 U.S. 640, 645 (1946), "a conspirator may be convicted of substantive offenses committed by co-conspirators in the course of and in furtherance of the conspiracy."  The grand jury found that Moore's murder and the overt acts with which Mouzone and Fleming are charged were in furtherance of a single conspiracy.  Thus, evidence of any of these overt acts is relevant to all co-conspirators. Accordingly, Mouzone's and Fleming's motions to sever will be denied.

II.  Anthony Fleming[4]

A.  Motion for a Bill of Particulars (Paper No. 593)

Fleming seeks a bill of particulars under Fed. R. Crim. P. 7(f).  A bill of particulars is appropriate when an indictment fails (1) to provide adequate information to allow a defendant to understand the charges and (2) to avoid unfair surprise.  *See United States v. American Waste Fibers Co*., 809 F.2d 1044, 1047 (4th Cir. 1987).  A bill of particulars is not a discovery device.  *United States v. Automated Med. Labs., Inc*., 770 F.2d 399, 405 (4th Cir. 1985) ("A bill of particulars is not to be used to provide detailed disclosure of the Government's evidence in advance of trial.").

---

[4] Fleming seeks leave to adopt all relevant co-defendant motions. Paper No. 642.  The Government did not oppose this motion. Paper No. 720.  Accordingly, it will be granted.

Fleming seeks disclosure of all confidential informants. Paper No. 594. Mouzone adopted this motion. Paper Nos. 600, 691. The Government disclosed this information to all defendants in November 2009. Paper No. 877.  Accordingly, the motion will be denied as moot.

Fleming has adopted co-defendant Ronnie Thomas's motions for disclosure under Fed. R. Crim. P. 12 (Paper No. 445) and (2) Fed. R. Evid. 801(d)(2)(E) and Hebron's motion for disclosure under Fed. R. Evid. 404(b) (Paper No. 391).  Paper No. 685. The Government has informed the Court that it will not present 404(b) evidence against Fleming.  Paper No. 883.  It has also confirmed that all Rule 12 and Rule 801 disclosures have been made.  *Id*.  Accordingly, Fleming's adopted motions seeking these materials will be denied as moot.

He has also adopted Mouzone's motions to suppress firearms identification evidence (Paper Nos. 565, 566, 639). Paper Nos. 571, 657, 685.  These are resolved below in Part III.

The 49-page Indictment allows the defendants to understand the charges.  Each count states the controlling statutes, relevant dates, and facts supporting the charge.  Count One, conspiracy to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d), describes the history, purpose, and operations of the Tree Top Pirus ("TTP")(a subset of the Bloods gang), the criminal "enterprise" with which Fleming was allegedly associated.  Count One alleges 117 "overt acts" in furtherance of the conspiracy.  The overt acts allege dates, details, and each defendant's connection to the enter-prise.  The other counts in which Fleming is charged also allege the elements of the charges and the dates on which they occurred.

The Government has provided the defendants with thousands of pages of documents, video and audio surveillance, lists of witnesses, expert reports, and defendant statements.  Govt. Opp. to Mot. for Bill of Particulars 3-4.  Fleming understands the charges against him, and there is little risk of surprise at trial.  Accordingly, his motion for a bill of particulars will be denied.

B.  Motion to Dismiss Count One of the Indictment (Paper No. 568)

Fleming has moved to dismiss Count One, Conspiracy to Participate in a Racketeering Enterprise in violation of 18

U.S.C. § 1962(d) ("RICO").[5]  Mouzone has adopted this motion.
Paper No. 691.

Count One alleges that the TTP is a RICO enterprise.  Its
117 "overt acts" demonstrate a pattern of racketeering activity.
Fleming moves to dismiss Count One on the grounds that (1) the
Government has no evidence of an identifiable structure that
could constitute an "enterprise" and (2) even if there is
evidence of an enterprise, there is no evidence that Fleming had
a role in it.  Specifically, Fleming argues that (1) there is
"no reliable evidence to suggest" his involvement with the
November 17, 2006 murder of Lamont Jackson, which is alleged as

---

[5] Under RICO, it is "unlawful for any person employed by or
associated with any enterprise engaged in, or the activities of
which affect, interstate or foreign commerce, to conduct or
participate, directly or indirectly, in the conduct of such
enterprise's affairs through a pattern of racketeering
activity."  *Id*. § 1962(c).  Section 1962(d) makes it unlawful
for any person to conspire to violate § 1962(c).

A RICO conviction requires proof of an "enterprise" and a
"pattern of racketeering activity."  *See* 18 U.S.C. § 1961(1).
An "enterprise" includes "any union or group of individuals
associated in fact."  *Id*. § 1961(4).  An "association-in-fact
enterprise" requires proof of: (1) a purpose, (2) relationships
among those associated with the enterprise, and (3) longevity
sufficient to permit these associates to pursue the enterprise's
purpose.  *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009).
A "pattern of racketeering activity," requires proof of two
predicate acts of "racketeering activity," as that term is
defined in 18 U.S.C. § 1961(1).  The Government need not prove
that each defendant committed two predicate acts; it is
sufficient if two such acts were committed by any member of the
conspiracy.  *See Salinas v. United States*, 522 U.S. 52, 64-66
(1997).

Overt Act 3 of Count One, and (2) the other Overt Acts in which he is named are "purely local and/or individual acts," unconnected to the alleged enterprise.

"The longstanding rule of law that courts may not 'look behind' grand jury indictments if 'returned by a legally constituted and unbiased grand jury' is the touchstone for any inquiry into the legality of indictments."[6]  "If [the indictment is] valid on its face, [it] is enough to call for trial of the charges on the merits."  *Id*.[7]  "The Supreme Court has clearly indicated its unwillingness to second guess the decision of a grand jury to formally accuse an individual brought before it based upon some incriminating evidence."  *Id*.

Fleming does not challenge the facial validity of the indictment or the legality of the grand jury proceedings.  The

---

[6] *United States v. Mills*, 995 F.2d 480, 487 (4th Cir. 1993) (*quoting Costello v. United States*, 350 U.S. 359, 363 (1956)). The *Costello* Court was urged, but declined, to hold that defendants may "challenge indictments on the ground that they are not supported by adequate or competent evidence."  *See Costello*, 350 U.S. at 364.  There is no summary judgment in criminal cases.

[7] Facial validity requires compliance with the Fifth and Sixth Amendments and Fed. R. Crim. P. 7(c)(1).  "To pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." *United States v. Williams*, 152 F.3d 294, 299 (4th Cir. 1998). Rule 7(c)(1) merely requires "a plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7.

grand jury found sufficient evidence of an enterprise and overt acts connected to that enterprise to indict.  As the Court may not "look behind" a valid indictment to assess the sufficiency of the evidence against a defendant, Fleming's motion must be denied.[8]

### C. Motion to Exclude Evidence of Pretrial Identification (Paper No. 567)

Fleming has moved to exclude two pretrial photo-array identifications in connection with the November 17, 2006 murder of Lamont Jackson, an overt act in Count One.  Indictment ¶ 25(3); Hr'g Tr. 88, Nov. 5, 2009.  Davon Lindsay and Kowan Brice identified Fleming in photo arrays.[9]  Brice also identified Mouzone shortly after the Fleming array.  Hr'g Tr. 70.[10]

Fleming challenges the April 12, 2007 identification.  Hr'g Tr. 75; Gov't Ex. 5.  Baltimore Police Detective John Riddick

---

[8] Fleming separately moved to strike Overt Act 3 in Count One-- the alleged murder of Lamont Jackson--on the ground that the Government had no evidence that the murder was part of the alleged racketeering conspiracy.  Paper No. 572.  Mouzone adopted this motion.  Paper No. 576.  Like Fleming's motion to dismiss Count One, this motion asks the Court to make a pretrial assessment of the sufficiency of the evidence against him. Because the Court may not do this, *see United States v. Mills*, 995 F.2d 480, 487 (4th Cir. 1993), the motion will be denied.

[9] There was testimony at the November 5, 2009 hearing about a third identification, Hr'g Tr. 71-71, but this identification was not of Fleming or Mouzone.  Thus, neither defendant has standing to object to its admission.

[10] Mouzone has adopted Fleming's motion to exclude evidence of this identification.  Hr'g Tr. 70.

showed Lindsay an array with six pictures of young African American men, including Fleming, whose picture was in the top right corner.[11]  Hr'g Tr. 76; Gov't Ex. 5.  Riddick informed Lindsay that the array "may or may not contain a picture of the person who committed the crime being investigated."  *Id*.  He then placed the array face-down and instructed Lindsay to turn it over when ready.  Hr'g Tr. 76.  Lindsay turned the array over, identified Fleming, and signed above Fleming's picture.  *Id*. 76-77.  On the reverse of the array, Lindsay wrote, "This is the person shoot Lamont."  *Id*. 78; Gov't Ex. 5.  Riddick testified that he did not say or do anything to influence Lindsay's identification or statement.  *Id*. 78.

On April 25, 2007, Riddick and a Baltimore County Police detective met with Brice at the Baltimore County Detention Center, where he was incarcerated, and showed him two arrays.  *Id*. 78.[12]  The first array contained six pictures of young African American men, including Fleming, whose picture was in

---

[11] Before showing the array, Riddick informed Lindsay that he was a suspect in Jackson's murder and explained that he did not have to view the array or answer questions.  Hr'g Tr. 89, 92. Riddick also read Lindsay his *Miranda* rights.  *Id*. 92.

[12] Riddick and Brice had previously discussed Jackson's murder. Hr'g Tr. 105-06.  At that meeting, Brice told Riddick that he had driven Fleming and Mouzone near the place of the murder. *Id*.  Riddick did not remind Brice of this discussion before showing him the photo arrays at the April 25, 2007 meeting.  *Id*. 111.

the center of the bottom row. *Id*. 83; Gov't Ex. 7. Riddick read Brice the same statement he had read to Lindsay and placed the array face-down in front of Brice. *Id*. 80. Brice turned the array over and identified Fleming. *Id*. 80. He signed above Fleming's photo and wrote, "I gave Mo a lift to east B-more and something down there happen. In a gray Dodge dargo [sic]."[13] *Id*. 81. Riddick testified that he did not say or do anything to influence Brice's identification or statement. *Id*.

Four minutes later, Riddick showed Brice a second array of six pictures of young African American men, including Mouzone, whose picture was in the bottom left corner. *Id*. 81-83; Gov't Ex. 6. Riddick again explained that the array may or may not contain a picture of the person who committed the crime and placed the array face-down in front of Brice. *Id*. 82. Brice turned the array over and identified Mouzone. *Id*. He signed above Mouzone's photo and wrote, "This is Batman. I gave them a lift." *Id*. 84.[14] Riddick testified that he did not say or do anything to influence Brice's identification or statement. *Id*.

Exclusion of pretrial identifications requires a showing that the identification procedures were "impermissibly

---

[13] The Government alleges that Fleming is also known as "Mo Easy." Indictment 2.

[14] Riddick testified that "Batman" is Mouzone. *Id*. The Indictment also identifies Mouzone by that name. Indictment 2.

suggestive." *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977).

The Court must then determine whether the pretrial

identifications were reliable under the totality of the

circumstances. *Id*. at 114-17. The exclusion of identification

evidence is a "drastic sanction" that should be "limited to

identification testimony which is manifestly suspect." *Harker*

*v. Maryland*, 800 F.2d 437, 443 (4th Cir. 1986). Evidence that

does not give rise to a substantial likelihood of irreparable

misidentification should be left for the jury to weigh. *See*

*Manson*, 432 U.S. at 116 ("[E]vidence with some element of

untrustworthiness is customary grist for the jury mill.").

Mouzone and Fleming have not identified any "impermissibly

suggestive" aspect of the identifications.[15] Nor did Detective

Riddick's testimony reveal that he used impermissible procedures

during any of the identifications. Because the defendants have

failed to show that the identification procedures were

impermissibly suggestive, their motions will be denied.

D. Motion to Suppress Evidence and Dismiss Overt Act 24
   from the Indictment (Paper No. 574)

Overt Act 24 alleges that on April 24, 2007, Fleming

---

[15] Fleming did not explain the basis for his motion; he merely
requested that a hearing be held and asked that the Court
suppress the identifications for reasons that "may be adduced"
at the hearing. Mot. to Suppress 2. Mouzone did not file a
separate motion, but indicated at the hearing that he wished to
adopt Fleming's motion. Hr'g Tr. 70. At the hearing, neither
counsel argued why the identifications should be suppressed.

possessed with the intent to distribute two ounces of cocaine
base.  Indictment ¶ 25(24).  Fleming moves to strike this
portion of the Indictment because the Government has no evidence
that the alleged possession was connected to the RICO
conspiracy.  As noted above, the Court does not make pretrial
assessments of the evidence against a defendant.  The grand jury
found sufficient evidence to charge the alleged possession as an
overt act in furtherance of the RICO conspiracy.  The Court will
not "look behind" this determination.

Fleming also moves to suppress the drugs on the ground that
their recovery violated his Fourth Amendment rights.  At the
November 5, 2009 hearing, Detective Zachary Wein of the
Baltimore Police Department testified that on April 24, 2007, he
received a tip from a paid confidential informant[16] that a man
was distributing "packs" in front of a McDonald's restaurant on
Greenmount Avenue in Baltimore.  Hr'g Tr. 47-57.  Wein
understood "packs" to mean large packages of drugs meant for
street-level distribution.  *Id*. 49-50.  The informant described
an African American male wearing a black T-shirt, a black
Chicago Bulls cap, and having a black cell phone case on his

---

[16] Wein testified that he had been working with the informant for
about a year and a half, and that the informant had provided
useful information on many occasions.  Hr'g Tr. 48-49.  He also
testified that although not all of the informant's tips had
yielded arrests, the informant had never provided false
information.  *Id*.

right hip. *Id*. 50.  Wein and Detective Lamont Pride soon went to the McDonald's, and saw Fleming--who matched the informant's description--standing in front. *Id*. 52-53.  The detectives were in an unmarked car, in plain clothes, with their badges around their necks. *Id*. 51-52.  When Wein arrived at the scene, he had planned to interview Fleming, *id*. 51, but as he approached, he saw that the cell phone case on Fleming's hip was "bulging," and a plastic bag containing a "white rock substance" was protruding from the case, *id*. 52.[17]  Wein decided to arrest Fleming. *Id*. 53.  A search of the cell phone case revealed two plastic bags of cocaine base. *Id*.

Fleming argues that the drugs must be suppressed because there was no probable cause to search him.  The Government contends that Wein had probable cause to believe that a crime was being committed because Wein could see that Fleming possessed drugs, and was able to make a warrantless arrest and conduct a search incident to that arrest.[18]

---

[17] Wein was able to see the case because Fleming's shirt was tucked in. *Id*. 53.

[18] Warrantless arrests--and searches incident thereto--are permitted when there is probable cause to believe that a felony is being or has been committed. *See Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *United States v. McCraw*, 920 F.2d 224, 227 (4th Cir. 1990).  Warrantless arrests are also permitted if there is probable cause to believe that a misdemeanor is being committed in the officer's presence. *See United States v. McNeill*, 484 F.3d 301, 310-12 (4th Cir. 2007).  "A combination of tips from an informant and first-hand corroborative

14

The tip from a reliable informant about the distribution of drugs in front of a McDonald's, the detailed description of the seller, Wein's observation that the informant's description matched Fleming, and Fleming's phone case bulging with what appeared to be cocaine gave Wein probable cause to arrest Fleming.[19]  Because Wein had probable cause to arrest Fleming, the search incident to his arrest was permissible.  *See Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979).  Accordingly, Fleming's motion to suppress will be denied.

> E.  Motion *in Limine* to Exclude Recorded 911 Calls (Paper No. 790)

Fleming has moved to exclude 911 calls about the Jackson murder.  The motion was filed after the November 5, 2009 hearing, and the Court has not received recordings of the calls.  The Court will defer ruling on their admissibility until the Government proffers them.  Counsel should refrain from referring to the calls in their opening statements.

---

observation of suspicious activity will provide probable cause for an arrest."  *McCraw*, 920 F.2d at 227.

[19] Wein had probable cause to believe that Fleming had committed the offense of "possessing . . . [a] controlled dangerous substance" in violation of Md. Code Ann. Crim. § 5-601, which is a misdemeanor.  Given that the cell phone case was "bulging" with what appeared to be cocaine--and that the informant had told Wein that Fleming had been distributing packages--Wein had probable cause to believe Fleming possessed cocaine with the intent to distribute it in violation of § 5-602, a felony.

F.  Motion for a Pretrial Hearing to Determine the
    Admissibility of Out of Court Statements (Paper No. 885)

Fleming seeks a pretrial hearing to determine whether a
witness's testimony about statements Fleming made to the witness
is admissible.[20]  Fleming quotes the Government's paraphrase of
the witness's probable testimony and argues that the testimony
will be so unreliable as to be irrelevant.  He also argues that
even if the statements are relevant, their probativeness is
substantially outweighed by their prejudicial effect.  Fleming
requests a pretrial hearing for the Court to determine the
admissibility of this testimony.

The Court will defer ruling on this motion until the
Government proffers the testimony.  Then, the Court will assess
whether it is necessary to hold a hearing outside the presence
of the jury.  Counsel should refrain from referring to the
testimony in their opening statements.

---

[20] The statements were disclosed by the Government on March 18,
2010.

III. Tavon Mouzone[21]

A.  Motion to Exclude Firearms Testimony

Among the overt acts alleged in furtherance of the RICO conspiracy are two homicides involving Mouzone on November 17, 2006 in Baltimore, Maryland, and December 17, 2006 in Essex, Maryland.  Indictment ¶ 25(3),(6).

Investigators found cartridge casings at both crime scenes, and a Baltimore County firearms examiner, Sgt. Mark Ensor, concluded that the cartridges "matched," i.e., that it was highly likely they were discharged from the same gun.  The Government intends to call Ensor as an expert witness.

On August 10, 2009, Mouzone moved to exclude Ensor's testimony, arguing that the basis for his conclusion--"firearm toolmark identification"--is unreliable and scientifically invalid.  Paper Nos. 566, 639; Fed. R. Evid. 702.[22]  Mouzone also moved to exclude the testimony under Fed. R. Crim. P. 16 because

---

[21] Mouzone has moved for disclosure under Rule 16 (Paper Nos. 630, 640) and has adopted co-defendant motions for disclosure of: confidential informants (Paper No. 594), government agent interview notes (Paper No. 755), evidence to be introduced under Federal Rule of Evidence 404(b) (Paper No. 442) and 801(d)(2)(E) (Paper No. 448). Paper Nos. 600, 691.  The Government has informed the Court that it will not present 404(b) evidence against Mouzone.  Paper No. 883.  The Government has confirmed that it has disclosed all the other materials sought by Mouzone in these discovery motions.  Id.  Accordingly, the motions will be denied as moot.

[22] Fleming has adopted Mouzone's motion.  Paper No. 571.

the Government's summary of Ensor's opinions did not describe

the bases and reasons for those opinions, as Rule 16 requires.

Paper No. 565, 640.[23]

Chief Magistrate Judge Paul W. Grimm conducted a hearing on

October 26, 2009 and issued a Report and Recommendation (the

---

[23] As explained in Judge Grimm's Report and Recommendation, the
Government has since disclosed this information to Mouzone and
the motion is moot. *See United States v. Mouzone*, 2009 WL
3617748, at *30 (D. Md. Oct. 29, 2009). However, Judge Grimm
believed that the untimeliness of the Government's Rule 16
disclosures (full disclosures having been made only a week
before the trial was scheduled to begin) warranted sanctions.

Accordingly, he recommended that (1) Mouzone be granted a
continuance to attempt to locate a rebuttal expert to challenge
Ensor's identifications; (2) that additional funds be approved
under the Criminal Justice Act to pay for a rebuttal expert; (3)
that the U.S. Attorney's Office be required to provide a report
identifying its policies and training regarding Rule 16
discovery obligations; and (4) that the Government be prohibited
from arguing or implying that Mouzone had, but did not take, the
opportunity to hire a firearm's examiner to visit the Baltimore
County Policy Department's Forensic Science Division to review
the toolmark evidence. *See United States v. Mouzone*, 2009 WL
3617748, at *31-*32 (D. Md. Oct. 29, 2009).

As Mouzone has now had time to locate a rebuttal expert and
to review the evidence at issue, Judge Grimm's first and fourth
recommendations are moot. The Court will adopt the
recommendation that additional funds be provided for a rebuttal
expert at Mouzone's request.

Judge Grimm recommended that the U.S. Attorney's Office be
required to provide a report regarding Rule 16 compliance. The
Court finds that two recently-released memoranda from former
Deputy Attorney General David W. Odgen--which gave department-
wide guidance on, *inter alia*, Rule 16 compliance and required
each U.S. Attorney's Office to develop a discovery policy--
sufficiently address this Recommendation. *See* Letter from David
W. Ogden to Hon. Anthony Scirica, Jan. 4, 2010.

"Report") on October 29, 2009, recommending that Mouzone's motions be granted in part and denied in part.  *See generally United States v. Mouzone*, 2009 WL 3617748 (D. Md. Oct. 29, 2009).  Judge Grimm conducted thorough research and careful analysis of the complex issues raised by these motions.

Judge Grimm recommended that Mouzone's Rule 702 motion to exclude Sgt. Ensor's testimony as unreliable and scientifically invalid be denied, and that Sgt. Ensor be permitted to testify to his conclusions.  *Id.*  As Judge Grimm noted, his recommendation is consistent with every reported federal decision to have addressed the admissibility of toolmark identification evidence.  *Id.* at *14 (collecting cases).  However, in light of two recent National Research Council studies that call into question toolmark identification's status as "science,"[24] Judge Grimm concluded that toolmark examiners must be restricted in the degree of certainty with which they express their opinions.  *Id.* at *15.

With regard to Ensor's prospective testimony, Judge Grimm found that a complete restriction on the characterization of certainty was warranted because at least some of Ensor's

---

[24] *See* National Research Council, Committee on Identifying the Needs of the Forensic Sciences Community, *Strengthening Forensic Science in the United States: A Path Forward* 42, 153-55 (2009); National Research Council, Committee to Assess the Feasibility, Accuracy and Technical Capability of a National Ballistics Database, *Ballistic Imaging* 1-5, 55, 82 (2008).

conclusions relied on an examination of a Baltimore City examiner, whose qualifications, proficiency and adherence to proper methods are unknown. *Id*. at *24. Judge Grimm thus departed from recent cases in which firearm and toolmark examiners have been permitted to state their opinions to "a reasonable degree of certainty in the ballistics field." *See, e.g.*, *United States v. Diaz*, 2007 WL 485967, at *4 (N.D. Cal. Feb. 12, 2007); *United States v. Monteiro*, 407 F. Supp. 2d 351, 355 (S.D.N.Y. 2006).

In its October 30, 2009 letter to the Court, the Government stated that, consistent with Judge Grimm's recommendation, it would not seek to have Ensor state his conclusions with any degree of certainty. Paper No. 733. The Government also stated that it did not object to the Report. *Id*. The same day, Mouzone filed objections to the Report.[25] Paper No. 732. After

---

[25] Mouzone objects to the Report on the grounds that Judge Grimm did not properly consider the (1) error rates, (2) testing, (3) peer review, (4) standards, and (5) acceptance in the scientific community of toolmark identification evidence. He argues that Judge Grimm failed to "fully apply" the *Daubert* factors and to consider the fact that no firearm was recovered in this case, which, he contends, makes the comparison of cartridge casings less reliable. Mouzone maintains that Fed. R. Evid. 702 and *Daubert* require Ensor's testimony to be excluded.

*Daubert* lists a number of nonexclusive factors--including the five factors listed by Mouzone--to assist the trial judge in determining whether proposed expert evidence is reliable. *See id*. at 593-94. *Kumho Tire Co*. made it clear that *Daubert*'s list of factors "neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526

*de novo* review of the portions of the Report to which Mouzone

has objected, the Court will overrule the objections and--with

the exception of those recommendations that are moot--will adopt

the Report and Recommendation.[26]

---

U.S. 137, 141 (1999).  The role of the Court--with regard to
scientific and non-scientific expert testimony--is merely to
ensure that expert testimony "rests on a reliable foundation and
is relevant."  *Daubert*, 509 U.S. at 597.

    Although Judge Grimm did not exhaustively address each of
the nonexclusive *Daubert* factors, his determination of the
relevance and reliability of Ensor's testimony is sound, and the
testimony is admissible.  As Judge Grimm aptly noted:

> The Courts that, in increasing number, have expressed
> concerns regarding the reliability of firearms
> toolmark identification evidence have permitted its
> introduction in spite of their concern, in substantial
> reliance on the ability of defense counsel to be able
> to challenge the identification at trial through
> effective cross-examination, or by offering defense
> experts to challenge it.

*Mouzone*, 2009 WL 3617748, at *28; *see also* Fed. R. Evid. 702
advisory committee's note ("[T]he trial court's role as
gatekeeper is not intended to serve as a replacement for the
adversary system.").  The trial will afford Mouzone an adequate
opportunity to test the reliability of Ensor's methods and
conclusions, and will provide sufficient safeguards against
prejudice and jury confusion.

[26] As noted above, Judge Grimm's recommendations that Mouzone be
granted a continuance to locate a rebuttal expert and that the
Government not be permitted to argue or imply that Mouzone had,
but did not take, the opportunity to hire an expert, are now
moot.  Further, the recommendation that the U.S. Attorney's
Office be required to provide a written report about its
discovery compliance policies has been satisfied by the
Department-wide guidance in the memoranda from former Deputy
Attorney General Odgen.  Thus, these recommendations need not be
adopted.

B.  Motion *in Limine* to Exclude Certain Alias or Nickname
(Paper No. 763)[27]

Each defendant has at least one alias listed in the style
and text of the Indictment.  Mouzone is referred to as "TAVON
MOUZONE, a/k/a Batman, a/k/a Bloody Batman" in the style.  He
requests that the Government be prevented from referring to him
as "Bloody Batman" until evidence has been presented that he was
known by it.

"If the Government intends to introduce evidence of an
alias and the use of that alias is necessary to identify the
defendant in connection with the acts charged in the indictment,
the inclusion of the alias in the indictment is both relevant
and permissible, and a pretrial motion to strike should not be
granted."  *United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir.
1976).  "However, if the prosecution either fails to offer proof

---

The Court will adopt: Recommendation (1) "[t]hat Sgt. Ensor
not be allowed to opine that it is a 'practical impossibility'
for any other firearm to have fired the cartridges other than
the common 'unknown firearm' to which Sgt. Ensor attributes the
cartridges"; Recommendation (2) "that Sgt. Ensor only be
permitted to state his opinions and bases without any
characterization as to degree of certainty"; and Recommendation
(6) "[t]hat additional funds be approved under the Criminal
Justice Act to pay for any additional expert time on the part of
Professor Schwartz or any other expert sought by Defendant
Mouzone to testify at trial, if permitted by the Court." See
*Mouzone*, 2009 WL 3617748, at *31-*32.

[27]  Before filing this motion, Mouzone adopted co-defendant
Sherman Pride's motion requesting the same relief (Paper No.
649).  Paper No. 691.  By filing his own motion, Mouzone
rendered the adopted motion moot; thus, it will be denied.

relating to the alias or the alias, though proven, holds no relationship to the acts charged, a motion to strike may be renewed, the alias stricken and an appropriate instruction given the jury." *Id*.

The Government has indicated that it will introduce evidence of the defendants' aliases because they rarely used their real names when communicating with each other.  For example, the Government intends to use intercepted prison mail in which the defendants and their associates refer to each other by aliases.  Because this evidence is relevant, Mouzone's motion will be denied. "[S]hould the Government fail to offer proof relating to the alias or the alias, though proven, holds no relationship to the acts charged," the motion may be renewed and an appropriate jury instruction will be given.

C. Motion *in Limine* to *Voir Dire* "Gang Expert" (Paper No. 793)

The Government intends to call Detective Christopher Hodnicki of the Baltimore County Police Department as an expert who will testify about the formation of gangs in Maryland and the history, practices, structure and symbology of the TTP. Mouzone requests a pretrial *Daubert* hearing so that he may have *voir dire* on Hodnicki's qualifications and expertise, and the Court may determine whether his testimony will be admissible.

As noted above, expert testimony is admissible under Rule

702 if "it rests on a reliable foundation and is relevant."
*Daubert*, 509 U.S. at 597.  "[T]he law grants a district court
the same broad latitude when it decides *how* to determine
reliability as it enjoys in respect to its ultimate reliability
determination."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142
(1999).

At trial, after the Government has tendered Hodnicki as an
expert, Mouzone will be permitted *voir dire* on qualifications.
The Court will then determine whether Hodnicki qualifies as an
expert.  If Hodnicki is permitted to testify, Mouzone will have
the opportunity to test his knowledge and credibility on cross-
examination.  Accordingly, to the extent that Mouzone's motion
requests *voir dire*, it will be granted.  However, his request
for a pretrial hearing will be denied.


March 23, 2010                    _____/s/_____
Date                              William D. Quarles, Jr.
                                  United States District Judge