```
            IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                *
UNITED STATES OF AMERICA
                                *
      v.                            CRIMINAL NO.: WDQ-08-0086
                                *
STEVE WILLOCK, et al.
                                *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

The grand jury indicted Anthony Fleming and Tavon Mouzone for Conspiracy to Participate in a Racketeering Enterprise in violation of 18 U.S.C. § 1962(d) ("RICO"). The Indictment alleged as an overt act in furtherance of the RICO conspiracy Fleming and Mouzone's murder of Lamont Jackson on November 17, 2006. At trial, the Government sought to introduce recordings of 911 calls about the Jackson murder. Fleming objected that their admission would violate his Sixth Amendment Confrontation Clause rights.[1] For the following reasons, his objection was sustained in part and overruled in part.

I.    Background

The Government moved the admission of four 911 calls made shortly after the shooting of Lamont Jackson. Two calls were made by a male caller who witnessed the shooting and fled the scene. The third and fourth calls were made by two women who

---

[1] Fleming also filed a pretrial motion to suppress the calls on this basis. Paper No. 790.

arrived at the scene shortly after the shooting.  The callers did not give their names and have not been identified.

The first caller tells the 911 operator that he wishes to remain anonymous; he then describes the shooting on Streeper Street, and explains that the shooter must have "meant to kill" the victim because he "ran inside the house and shot [the victim] . . . like 15 [times]."  After the caller provides more information about the location of the shooting, the operator states her understanding that the caller wishes to remain anonymous, but asks if he had seen the shooter's clothing.  He replies that the shooter is wearing a green jacket and was accompanied by a darker, younger man.  The caller also states that the shooter and his accomplice had fled in a "Durango truck" with "tinted windows."  The operator tells the caller that the police will be sent to the scene.

A short time later, the excited man called 911 again to report that the Durango had returned to Streeper Street.  He provides the location of the truck and hangs up.

The third and fourth calls were from two women, who had arrived at the scene after the shooting.  The callers requested emergency assistance for the victim.  The first caller reports that the victim is bleeding and "not moving"; the second merely requests an ambulance and ends the call.  Neither woman provided information about the shooting or the assailants.

II.  Analysis

The Confrontation Clause states the accused's "right to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36 (2004), held that the Confrontation Clause bars the "admission of testimonial statements of a witness who d[oes] not appear at trial unless [1] he [is] unavailable to testify and [2] the defendant had had a prior opportunity for cross-examination." 541 U.S at 53-54. Although *Crawford* "left for another day any effort to spell out a comprehensive definition of 'testimonial,'" *id*. at 68, it defined a "core class" of testimonial statements, which included, *inter alia*, "statements . . . made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*.

In *Davis v. Washington*, 547 U.S. 813 (2006)--involving the admissibility of 911 calls--the Supreme Court explained that a statement is "testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and the primary purpose of the interrogation[2] is to establish or prove past events potentially relevant to a later criminal prosecution." *Id*. at 822.  In *Davis*, statements made in a 911

---

[2] The Clause appears only to apply to statements made to law enforcement or the agents thereof.  In *Davis*, the Court assumed, without deciding, that 911 operators were the agents of law enforcement.

call during an ongoing domestic incident were not held to be testimonial, but statements made to a police officer after the incident were testimonial because the danger had passed.  *Id.*

In distinguishing testimonial from nontestimonial statements, the *Davis* Court considered whether the statements reported events "*as they were actually happening,* rather than 'describ[ing] past events.'" (emphasis in original).  *Id.* at 827.  Nontestimonial statements were made while the declarant was "facing an ongoing emergency," rather than "report[ing] a crime absent any imminent danger." *Id.*  Nontestimonial statements were in response to questions asked by the 911 operator that were "necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past." *Id.* (emphasis in original).  Finally, nontestimonial statements were made in less formal interviews than those involving testimonial statements.  *Id.*[3]

*Davis* requires the exclusion of the male caller's first 911 call.  The caller describes the shooting, the shooter, and the shooter's vehicle.  The caller's request to remain anonymous suggests his awareness that his statements might be used in a prosecution.  The caller neither seeks assistance to confront an "ongoing emergency" nor demonstrates his belief that he--or

---

[3] *See also Blount v. Hardy*, 337 Fed. Appx. 271, 277-78 (4th Cir. 2009) (applying the *Davis* factors).

4

anyone else--is in "imminent danger"; he is calling to report an apparently completed crime. His statements are testimonial and were excluded.

The call in which he reports the return of the shooter's Durango is different. The caller excitedly describes events as they are happening; he sees the Durango as he talks to the 911 operator. Also, the caller reports an "ongoing emergency"--the return of possibly-armed and dangerous men to the area--and seeks aid. This nontestimonial call was admitted.

The statements of the two female callers are also nontestimonial; the purpose of the calls is solely to obtain emergency assistance for the victim. Accordingly, they were admitted.

<u>April 9,2010</u>                                  _____/s/_____
Date                                           William D. Quarles, Jr.
                                               United States District Judge